**DELAWARE VALLEY TRANSPLANT PROGRAM, Veronica Durkin, Marianne Fletcher, Glen Miller, and Joyce Battle, Plaintiffs,**

v.

**Molley Joel COYE, M.D., M.P.H., Commissioner, State of New Jersey, Department of Health, Defendant,**

**and**

**New Jersey Organ and Tissue Sharing Network, Intervenor.**

Civ. A. No. 88–0548(SSB).

United States District Court, D. New Jersey.

Feb. 3, 1988.

Archer & Greiner by Gary J. Lesneski, Haddonfield, N.J., for plaintiffs.

Office of the Atty. Gen. by Michael Haas, Asst. Chief Atty. Gen., Health, Education, Labor & Commerce Section, Trenton, N.J., for defendant.

Cohen, Shapiro, Polisher, Shiekman and Cohen by Murray J. Klein, Trenton, N.J., for intervenor.

## OPINION

BROTMAN, District Judge.

### I. INTRODUCTION

This matter arises out of a January 27, 1988 action taken by Molley Joel Coye, the New Jersey Commissioner of Health, designating one organization, the New Jersey Organ and Tissue Sharing Network ["Network"] as the sole organ donor procurement agency for the State of New Jersey. Plaintiffs, the Delaware Valley Transplant Program ["DVTP"] and four individually named patients currently awaiting organ transplant operations, challenge the Commissioner's designation on the following grounds:

(1) that the designation violates the Commerce Clause;

(2) that the designation violates the rights of the plaintiffs to freedom of interstate travel, substantive due process, and equal protection of the laws; and

(3) that the Commissioner's action is inconsistent with and therefore pre-empted by federal regulations.

Plaintiffs further allege that the Commissioner's decision to appoint Network the sole organ procurement agency for the State of New Jersey poses a threat of irreparable harm to plaintiffs, and consequently, plaintiffs seek a temporary restraining order enjoining the Commissioner, her employees, agents and subordinates from implementing her decision. A hearing was held on plaintiffs' application on February 1, 1988, at which testimony was taken. During the hearing, the court also granted a motion by Network to intervene in these proceedings and to file papers in opposition.

■ For the reasons set forth below, plaintiffs' application for a temporary restraining order is granted.[1]

### II. FACTS AND PROCEDURE

DVTP, a Philadelphia-based non-profit organization, has, for the past thirteen years, procured organs for transplants in an area containing sections of Eastern Pennsylvania, the State of Delaware and nine counties located in Southern New Jersey. As part of its program, DVTP deals with 170 different hospitals, including twenty-five of the thirty-one hospitals located in South Jersey.

The organs procured by DVTP are used by eight regional transplant centers. Six of these centers are located in Philadelphia. According to plaintiffs, approximately twenty-five percent of the transplants at these six centers are performed on New Jersey residents. Also, according to plaintiffs, there are in excess of 150 New Jersey residents currently awaiting transplants at the six Philadelphia centers. These patients include plaintiffs Darling, Fletcher, Miller and Battle.

The Philadelphia transplant centers provide transplant services not now available in South Jersey hospitals. These services include heart, heart-lung, liver and pancreas transplants, as well as multiple organ transplants. Only one South Jersey hospital is certified as a transplant center—Our Lady of Lourdes Hospital in Camden, which only has a transplant program for kidney operation.

In 1986, Defendant Coye commissioned a task force to make recommendations regarding the organ transplant procedures in New Jersey. The mandate of the task force was to assure that retrieved organs are distributed fairly and efficiently, so to avoid the public perception that organ donating unfairly benefits those outside the community. DVTP was denied the opportunity to be a member of the task force. Instead, the task force was comprised of almost all North Jersey-based members, including a representative of what is now

---

1. Under Rule 65 of the Federal Rules of Civil Procedure, a temporary restraining order granted without notice to the opposing party or an opportunity for that party to be heard must, by its terms, expire within no more than ten days from the date of its issuance. Fed.R.Civ.P. 65(b). When, however, an application for a temporary restraining order is, as in this case, the subject of an adversary hearing upon reasonable notice, that application may be treated as one for a preliminary injunction to which the time restrictions of Rule 65(b) do not apply. *See Wright & Miller, Federal Practice and Procedure: Civil* § 2951.

known as the Network, the organization subsequently designated as the sole organ procurer for the State.

In March 1987, a certificate of need application was filed on behalf of Network, the purpose of which was to consolidate the procurement efforts of two previously separate and competing entities: the Northern New Jersey Organ Procurement Program and the Transplant Foundation of New Jersey, Inc. This application was conditionally approved by the Commissioner on August 26, 1987. The approval was contingent on Network's filing of an application for a certificate of need to become the sole statewide organ procurement agency. Network so applied on September 28, 1987. On January 27, 1988, Commissioner Coye approved Network's application, thereby designating Network the sole organ procurement agency for New Jersey.

## III. DISCUSSION

In order to establish an entitlement to preliminary injunctive relief, plaintiffs must demonstrate (1) that there is a reasonable probability that they will succeed on the merits; (2) that they will be irreparably harmed if the injunction is not granted; (3) that they will suffer more harm if the injunction is not granted that defendants will suffer if the injunction is granted; and (4) that the granting of the injunction is not contrary to the public interest. *SI Handling Systems, Inc. v. Heisley,* 753 F.2d 1244, 1254 (3d Cir.1985).

### (A) Probability of Success on the Merits

■ The Commerce Clause of the United States Constitution, Art. 1, Sect. 8, cl. 3, commits to Congress the sole authority for regulating commerce among the several states. Out of this provision, has, by implication, grown the concept that states are forbidden from enacting protectionist legislation which places burdens or restraints on interstate commerce. *See Pennsylvania v. West Virginia,* 262 U.S. 553, 596, 43 S.Ct. 658, 664, 67 L.Ed. 1117 (1923). In the present case, plaintiffs argue that the Commissioner's decision to designate Network

the sole organ procurement agency for New Jersey is an impermissible protectionist measure which seeks to assure that organs retrieved from patients in New Jersey hospitals are used only for in-state transplant operations.

■ In *City of Philadelphia v. New Jersey,* 437 U.S. 617, 98 S.Ct. 2531, 57 L.Ed.2d 475 (1978), the Supreme Court stated that, in evaluating a measure under the Commerce Clause, the threshold inquiry "must be directed to determine whether ... [the provision in question] is basically a protectionist measure, or whether it can fairly be viewed as a law directed to legitimate local concerns, with effects upon interstate commerce that are only incidental." *Id.* at 624, 98 S.Ct. at 2536. In so stating, the Court explained that "where simple economic protectionism is effected by state legislation, a virtually *per se* rule of invalidity has been erected." *Id., citing, H.P. Hood & Sons, Inc. v. DuMond,* 336 U.S. 525, 69 S.Ct. 657, 93 L.Ed. 865 (1949); *Toomer v. Witsell,* 334 U.S. 385, 403–06, 68 S.Ct. 1156, 1165–67, 92 L.Ed. 1460 (1947); *Baldwin v. G.A.F. Seelig, Inc.,* 294 U.S. 511, 525, 55 S.Ct. 497, 501, 79 L.Ed. 1032 (1934); *Buck v. Kuykendall,* 267 U.S. 307, 315–16, 45 S.Ct. 324, 325–26, 69 L.Ed. 623 (1925). However, "[i]f a legitimate local purpose is found then the question becomes one of degree." 437 U.S. at 624, 98 S.Ct. at 2535, *quoting Pike v. Bruce Church,* 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174 (1970).

In the case at bar, it appears at first blush that the Commissioner's designation of Network is a highly protectionist effort to keep organs retrieved in New Jersey from being used in out-of-state transplant operations. Nonetheless, the State claimed during the February 1 hearing that the Department of Health had taken no action against DVTP, and that DVTP was free to continue its procurement activities in the same manner as it had in the past.

The State's claim, however, is belied by its actions. The exhibits entered into evidence by the plaintiffs at the hearing are replete with indications of the Department of Health's intention to establish one statewide organ procurement agency for New

Jersey. *See* Exhibit D (August 26, 1987 letter from Commissioner Coye to Network approving Network's certificate of need application on the condition that Network file a further certificate of need "to become the Statewide Organ Procurement Agency for New Jersey...."); Exhibit H (January 27, 1988 letter from Commissioner Coye to Network approving Network's certificate of need application "for the establishment of an independently organized statewide organ retrieval agency," stating as one reason for such approval that "applicant's proposal is consistent with the September 1987 report of the ... Task Force ... which recommended the establishment of a single independently organized retrieval agency for the State."); Exhibit I (Organ Donor Option Certificate and Instructions, which were circulated to hospitals by New Jersey Department of Health and which instruct hospitals to contact Network for further information); Exhibit J (Network's application for certificate of need to become the independently organized organ retrieval agency for the state, in which Network states its purpose "of becoming the state's single, independently organized organ retrieval agency."). Furthermore, despite its protestations to the contrary, the State has offered no explanation for why it has designated Network the sole organ procurement agency for New Jersey, if not to preclude other organizations from procuring organs within the State.

Consequently, at least on the record thus far presented, plaintiffs have demonstrated a reasonable probability of success on the merits on their Commerce Clause claim alone.[2]

### (B) Irreparable Harm

Plaintiffs contend that implementation by the Commissioner of her decision to designate Network the sole organ procurement organization for New Jersey will irreparably disrupt DVTP's longstanding relationships with South Jersey hospitals which have been instrumental in DVTP's organ procurement efforts. Furthermore,

of particular concern to this court is the threatened depletion of the number of donor organs available to the individual plaintiffs which is posed by the Commissioner's actions. It is true that plaintiffs have yet to establish a direct causative link between the Commissioner's January 27, 1988 approval of Network's certificate of need and a decline in the number of donor organs available to plaintiffs. However, the inevitable result of the State's efforts to concentrate all organ retrieval activity within Network's operation is that the individual plaintiffs, who are not on Network's priority lists of patients awaiting transplants, will lose the potential benefit now provided by donor organs procured in South Jersey.

Intervenor-defendant Network argues that plaintiffs Fletcher and Battle, who are awaiting kidney transplants in Philadelphia hospitals, will not be irreparably injured in the event the Commissioner's designation of Network prolongs the period during which plaintiffs must remain on dialysis in lieu of a kidney transplant, since their survival is not imminently imperiled by continued dialysis treatment. The court is dismayed by the callousness of this argument, especially in light of its source—an organization which has been designated by the Commissioner as the sole organ procurement agency for New Jersey. Plaintiffs need not establish that defendant's actions place their lives in immediate jeopardy in order to invoke the equity jurisdiction of this court. It is enough that the challenged conduct will diminish the number of donor organs available to plaintiffs.

### (C) Balancing of Hardships

Having failed to articulate a legitimate purpose that will be furthered by implementation of the Commissioner's decision which is other than the consolidation of all in-state organ procurement efforts within a single agency, defendant has also failed to establish a congnizable hardship that will be visited on the State by the granting of the requested restraining order. As de-

---

2. Because the plaintiffs' Commerce Clause claim satisfies the test for preliminary injunctive relief with respect to the probability of success on the merits, the court need not address the strengths and weaknesses of plaintiffs' other claims at this time.

fendant acknowledges, DVTP has conducted organ procurement activities in the South Jersey area for the past thirteen years—activities with which, the State professes, it does not wish to interfere.[3] In light of these circumstances, maintaining the *status quo* until such time as the court can reach a conclusion on the validity of the Commissioner's designation of Network will impose, at most, a minor burden on the State.

### (D) The Public Interest

The court is concerned that the Commissioner's recent actions have created confusion among Delaware Valley Hospitals as to which organization to contact in making organ donor referrals. As stated at the February 1 hearing, several hospitals that have historically dealt with DVTP have been made aware of Network's designation as the sole state-certified procurement agency, and are unsure of what the implications or consequences will be of continuing their relationships with DVTP. Such an atmosphere of uncertainty does not benefit organ retrieval and transplant efforts, which obviously require swift judgments and prompt actions.

It is clear that the public's interest is best served by an efficient and cost-effective organ donation plan. In their submissions and at the February 1 hearing, plaintiffs offered evidence to establish that DVTP is a well-managed organization with one of the most cost-effective organ procurement programs in the country. Network, an organization which is less that six months old, has made no such showing. Certainly, allowing DVTP to continue its present operation unimpaired until the merits of this dispute are reached will not prejudice the residents of the Delaware Valley.

An appropriate order will be entered.

---

3. The court finds difficult to accept defendant's contention that it has not taken and will not take any action to affect DVTP's operation in South Jersey. Nonetheless, to the extent this representation is accurate, granting plaintiffs'

### ORDER

This matter having come before the court on plaintiffs' application for a temporary restraining order; and

The court having held a hearing on the application on February 1, 1988; and

The court having reviewed the submissions and oral arguments of the parties; and

For the reasons stated in the court's opinion filed this date,

IT IS on this 3rd day of February, 1988, hereby

ORDERED that plaintiffs' application for a temporary restraining order is GRANTED, and that defendant Coye, her employees, agents and subordinates are enjoined from implementing her decision to designate the New Jersey Organ and Tissue Sharing Network, Inc., as the sole organ procurement organization for the State of New Jersey, pending final hearing and determination of this cause, or until such other time as the court may so direct.

application will impose no hardship on defendant, in that such an order will only enjoin defendant from doing that which defendant claims it has no intention of doing.