Robert W. EARLEY

v.

Kenneth R. SMOOT.

Civ. No. S 94–622.

United States District Court,
D. Maryland.

March 22, 1994.

Michael P. Darrow, Hillman, Brown & Darrow, Annapolis, MD, Donald F. Griffin and William G. Mahoney, Highsaw, Mahoney & Clarke, P.C., Washington, DC, for plaintiff.

Thomas P. Bernier, White & Karceski, Towson, MD and Gregory T. Hughes, Hughes & Feldhouse, Ludlow, KY, for defendant.

## MEMORANDUM OPINION

SMALKIN, District Judge.

This is a case within the diversity and federal question jurisdiction of this Court, involving an allegation that the defendant

improperly taped the proceedings or a session of Public Law Board No. 3882, convened at the offices of CSX Transportation, Inc., at Baltimore, MD, on May 6, 1993. The plaintiff is an officer of defendant's union, the United Transportation Union (UTU), and he was a participant in the taped proceedings. Based upon his recording of the proceedings of the PLB, particularly an executive session thereof from which the defendant was excluded, the defendant has both filed suit against the UTU (and others) in the Northern District of Ohio (Case No. 1:94 CV 0485 (Judge Matia)) and instituted union disciplinary proceedings against the present plaintiff. The plaintiff seeks injunctive relief *pendente lite* from this Court, especially aimed at the defendant's use of the transcribed tape in connection with the UTU disciplinary proceedings, scheduled to be held before the Executive Board tomorrow, March 23, 1994. (Of course, in that the Union is not a party to this litigation, the Court cannot directly restrain it, or, for that matter, any party other than the defendant, who has appeared in person and by counsel before this Court. Plaintiff's counsel has represented to the Court, though, that the UTU will respect this Court's views as to the propriety of the contested tape.)

The plaintiff asserts that defendant's actions in allegedly surreptitiously taping the proceedings of the PLB violated the federal and Maryland anti-wiretapping statutes, 18 U.S.C. § 2510 *et seq.,* and MD.CTS. & JUD. PROC.CODE ANN., § 10–401 *et seq.,* both of which statutory schemes provide civil remedies, including (at least as to the federal statute) injunctive relief, to an aggrieved person for improper interception of, *inter alia,* oral conversations. *See* 18 U.S.C. § 2520(b)(1) and MD.CTS. & JUD.PROC. CODE ANN. § 10–410.

The Court has jurisdiction both because of the diversity of citizenship of the parties, 28 U.S.C. § 1332, and because there is a federal question raised, 28 U.S.C. § 1331.

The matter came on for hearing on the plaintiff's application for a temporary restraining order, in open Court, on March 22, 1994, at 11:00 a.m., both parties having appeared in person and by counsel, who argued the injunctive relief issues. At the hearing, both parties testified. Additionally, at the hearing, both parties consented to transfer of what remains of this case, after disposition of the present injunctive relief request, to the Northern District of Ohio, where related litigation is already pending (as mentioned above), for the convenience of the parties and witnesses, and in the interests of justice. 28 U.S.C. § 1404(a). (An appropriate order of transfer will be issued.)

■ The Court has considered the plaintiff's application for a temporary restraining order as a request for preliminary injunction, which it may properly do in that the application was heard in an adversary fashion, upon reasonable notice to the defendant, who appeared through counsel. *See, e.g., Delaware Valley Transplant Program v. Coye,* 678 F.Supp. 479, 480 n. 1 (D.N.J.1988).

On the merits of the request for preliminary injunction, the Court is of the opinion that the plaintiff is entitled to an injunction that restrains the defendant from, in any manner, pursuing or participating in the UTU disciplinary proceedings against plaintiff, currently scheduled for March 23, 1994, as to any issue relating to the plaintiff's participation in PLB No. 3882 on May 6, 1993. The reasons for this conclusion are set forth below.

First, the Court has concluded that the harm to the plaintiff without this decree far outweighs the harm to the defendant with such a decree. The plaintiff's standing in the UTU, and perhaps his entire career, are in peril should the tape or transcript of the PLB proceedings be utilized in any fashion, directly or indirectly, to support defendant's contentions that plaintiff breached his duties in connection with his conduct as a member of the PLB in question. The threatened injury appears, indeed, to be irreparable in damages or otherwise, in that, once the cat is out of the bag, it will be decidedly hard to put it back. That is, there is a considerable question as to whether, even if the tapes are later finally determined to have been made in violation of statute, the UTU would ever be obliged to disregard them, if the charges brought by the defendant were sustained at the March 23 hearing through any use of the

tape. The defendant, in contrast, has no personal stake (save that of any union member aggrieved by alleged misconduct of a UTU official) in the outcome of the disciplinary proceedings. Thus, the balance of harms tips decidedly in favor of the plaintiff. Furthermore, the taint given by the taping to the entire disciplinary proceedings would require that, to prevent the plaintiff from sustaining irreparable harm, the defendant not be allowed to make direct or indirect use of what he has learned from the tape, if indeed, injunctive relief is otherwise proper, as will be discussed *post.*

The balance having been so struck, the plaintiff, in order to obtain a preliminary injunction, need only show that there are serious or grave questions presented on the merits. *See Direx Israel, Ltd. v. Breakthrough Medical Corp.,* 952 F.2d 802, 812–13 (4th Cir.1991). Considering the law and the testimony heard this date, the Court is of the opinion that the plaintiff has so demonstrated.

First, the Court notes that, under both the Maryland and the federal statute, both civil and criminal liability are subject to the same standards of proof on issues of *mens rea. Benford v. American Broadcasting Corp.,* 649 F.Supp. 9 (D.Md.1986).

█ Under the Maryland statute, the plaintiff, in order for the defendant to be held to have violated it in a way opening himself up to any civil remedy, would have to prove that the defendant *wilfully* taped the proceedings, without the knowledge of the participants other than himself. MD.CTS. & JUD.PROC.CODE ANN., § 10–402. In order so to prove, the plaintiff would have to show that the defendant knew it was illegal to tape the proceedings without the consent of all parties. *Benford, supra.* This, based on all the papers and testimony in the case, the plaintiff simply cannot do.

█ On the other hand, the federal statute would impose criminal and civil liability on proof that the defendant intentionally intercepted the oral communications at issue, at least those to which he was not a party. 18 U.S.C. § 2511(1)(a). Indeed, 18 U.S.C. § 2511(1) was amended in 1986 to dilute the

standard of proof from wilfulness to mere intent, after holdings that the wilfulness standard required proof of knowledge of the unlawfulness of the interception. *Malouche v. JH Management Co.,* 839 F.2d 1024, 1025 n. 1 (4th Cir.1988). Although there is some authority that mere use of an illegally intercepted conversation does not, even post-amendment, sustain liability without proof of wilfulness, *see United States v. Wuliger,* 981 F.2d 1497 (6th Cir.1992), that authority is directed only towards the use of the interception, 18 U.S.C. § 2511(1)(d), not the making of it, 18 U.S.C. § 2511(1)(a). The difference in the language of the two prohibitions leaves this Court with no question that liability may be imposed under § 2511(1)(a) merely for intentional—in the traditional sense of purposeful—conduct, without a showing of disregard of a known legal duty. That is, under § 2511(1)(a), a defendant who actually intercepts a conversation in a prohibited fashion need not be proved to have known his conduct was illegal.

Turning to the evidence, there is a serious question raised by the plaintiff as to defendant's violation of § 2511(1)(a). The Court, based upon its credibility assessment of the testimony, is convinced that the defendant concealed his taping of all parts of the proceedings from the others present, and there is no question that he went to the proceedings fully intending to tape them, as witness the fact that he brought with him *two* recorders, both of which he turned on at the commencement of the hearing.

This conduct, alone, is not enough to impose liability, though, in view of the federal provision allowing anyone who is a party to a conversation to tape it, 18 U.S.C. § 2511(2)(d). (The Court, for reasons already stated, finds that the other parties did not consent to the taping.)

█ The significant issue, then, is whether the defendant intentionally taped the executive session conversations, to which he was not a party and to which, consequently, § 2511(2)(d) does not apply. The Court views the defendant's testimony on this point with great skepticism. He claims that, in his rush to leave the room when the executive session was announced, he simply swept both

running tape recorders from the table into his bag and exited, inadvertently leaving them running, resulting in the capture of the conversations here at issue. The Court, as stated above, doubts that the recorders ever were out of the defendant's bag in the first place. If they had been, surely they would have been noticed, and, just as surely, the members of the board would have made certain that they were not being recorded in executive session.

The Court, then, is of the opinion that there is a serious question about whether the defendant intentionally recorded the executive session from which he had been excluded; if pressed, the Court would indeed find on the present record that he did intentionally so record it. But, the Court need not make a definitive finding on the question of defendant's intent now. Indeed, this is question that ultimately will be determined by the trier of fact on the merits under the seventh amendment. *See* Fed.R.Civ.P. 65(a)(2). Instead, the Court need only find, under *Direx,* that there is a serious question to be adjudicated going to defendant's culpability under the federal statute, which there undoubtedly is.

Finally, the Court will consider the public interest. *Direx,* 952 F.2d at 814. In this case, there is no question that the public interest in protecting the people from eavesdropping is exceedingly strong, as witness Congress's imposition of not only civil, but also felony criminal, liability upon violators. There is, to be sure, also a public interest in the punishment of misbehaving union officials, but that interest is clearly outweighed by the public interest in protection of those officials from the use of their conversations that have been intercepted in violation of statute.