**UNITED STATES of America**

v.

**CITY OF NEW ORLEANS**

No. Civ. A. 99–0893.

United States District Court, E.D. Louisiana.

April 1, 1999.

---

Sandra Ema Gutierrez, U.S. Attorney's Office, New Orleans, LA, Elizabeth A. Edmonds, U.S. Dept. of Justice—Environmental Enforcement, Washington, DC, for United States of America, plaintiffs.

Deborah Louise Wilson, City Attorney's Office, New Orleans, LA, Daria Burgess Diaz, Daria Burgess Diaz, Metairie, LA, for New Orleans City, defendants.

### RULING ON MOTION AND ORDER

LIVAUDAIS, District Judge.

Before the Court is the Motion of the United States Environmental Protection Agency ("EPA"), for an Order in Aid of Immediate Access. The EPA seeks enforcement of a Unilateral Administrative Order ("UAO") issued by the EPA, pursuant to the Comprehensive Environmental Response, Compensation and Liability Act of 1980, 42 U.S.C. § 9601, et seq. ("CERCLA"). Defendant, City of New Orleans ("City"), opposes the motion.[1]

#### Factual Background

The City owns some undeveloped property in the area of the Agriculture Street Landfill Superfund Site (the "Site"). The Site, which was a municipal waste landfill, is located in New Orleans, Louisiana.

In September 1997, after the EPA had already conducted numerous investigations

---

1. In the collateral proceedings, Civil Action No. 99–0756, the City brought a complaint for a preliminary and permanent injunction to enjoin the EPA from obtaining access to the City's property at the Agriculture Street Site.

A temporary restraining order was previously granted by the Court on March 8, 1999. However, the Court dismissed the City's action because the Court did not have subject matter jurisdiction.

and remedial actions at different areas of the Site [2], the EPA authorized a "non-time critical removal action" on three of the five delineated sections of the Site, which included the property owned by the City. The "non-time critical removal action" involved excavation and removal of contaminated soil and the placement of two feet of clean soil on the developed portions of the Site, and the removal of vegetation, grading the soil, and the placement of one foot of soil on the undeveloped part of the Site, including the City's property.

On November 12, 1997, the EPA provided a copy of an "access agreement" to the City so that the EPA could obtain access to the City's property in order to undertake these clean-up actions. The City did not respond. On October 19, 1998, the EPA met with the City to discuss whether the City would allow the EPA to conduct the "response" actions. On November 19, 1998, the EPA again discussed the issue with the city and sent another "access agreement". Again, the City did not respond. On December 23, 1998, the EPA again wrote the City and requested access, noting that it had "statutory authority to secure access where entry is needed to effectuate a response action" under CERCLA. On January 7, 1999, the City unequivocally denied access to the EPA via letter. On February 24, 1999, EPA sent the UAO ordering that the City allow the EPA and its assigns access to the City's property. The UAO also ordered the City to notify the EPA whether it would comply by March 8, 1999. The City did not respond, and instead filed the complaint for a preliminary and permanent injunction to enjoin defendants from implementing continuing response efforts on the City's property at the Site. This Court granted a temporary restraining order on March 8, 1999, but subsequently dismissed the City's action concluding that it did not have subject matter jurisdiction.

**2.** The City has never opposed any of the response/remedial actions taken by the EPA un-

*Law and Analysis*

Under 42 U.S.C. § 9604(e)(5), this Court has jurisdiction to compel a party to allow the EPA to have access to their property. Consequently, this Court clearly has jurisdiction over the instant case as well as the EPA's Motion for Order in Aid of Immediate Access, pursuant to 42 U.S.C. § 9604(e)(5). Section 9604(e)(3), authorizes the EPA to enter any "property where entry is needed to determine the need for response or to effectuate a response action". 42 U.S.C. § 9604(e)(3). This authority of entry may be exercised "only if there is a reasonable basis to believe there may be a release or threat of release of a hazardous substance or pollutant or contaminant," 42 U.S.C. § 9604(e)(1). If an owner refuses the EPA's request for entry onto the property, then the EPA may either issue an administrative order of access or seek a court order to compel compliance. 42 U.S.C. § 9604(e)(5); *U.S. v. Mountaineer Refining Co.*, 886 F.Supp. 824, 827 (D.Wyo. 1995); *B.F. Goodrich Co. v. Murtha*, 697 F.Supp. 89, 96–97 (D.Conn.1988), *aff'd, B.F. Goodrich v. Murtha*, 958 F.2d 1192 (2d Cir.1992); *United States v. Charles George Trucking*, 682 F.Supp. 1260, 1264–65 (D.Mass.1988). 42 U.S.C. § 9604(e)(5) states in pertinent part:

(5) Compliance Orders.—

(A) Issuance.—If consent is not granted regarding any request made by an officer, employee, or representative under paragraph (2), (3), or (4), the President may issue an order directing compliance with the request. The order may be issued after such notice and opportunity for consultation as is reasonably appropriate under the circumstances.

(B) Compliance.—The President may ask the Attorney General to commence a civil action to compel compliance with a

til the September 1997 action.

request or order referred to in subparagraph (A). Where there is a reasonable basis to believe there may be a release or threat of a release of a hazardous substance or pollutant or contaminant, the court shall take the following actions:

(i) In the case of interference with entry or inspection, the court shall enjoin such interference or direct compliance with orders to prohibit interference with entry or inspection unless under the circumstances of the case the demand for entry or inspection is arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law.

42 U.S.C. § 9604(e)(5).

In the instant action, the only question before the Court is whether the government can prove the elements necessary under 42 U.S.C. § 9604(e)(5)(B). If the government cannot satisfy the statutory prerequisites, the Court cannot compel the City to comply with the EPA's UAO. As noted by several courts, the five statutory elements are: 1) the entry must be sought under paragraphs (2), (3) or (4) of § 9604(e); 2) the EPA must seek the property owner's consent before seeking court-ordered compliance; 3) the EPA must demonstrate that there is a "reasonable basis to believe" that there may be a release of a hazardous substance, pollutant, or contaminant from the site; 4) there must be some interference with the entry request before the court may order compliance; and 5) the demand for entry must not be arbitrary and capricious, an abuse of discretion, or otherwise in violation of law. *Mountaineer,* 886 F.Supp. at 827–28 (quoting *United States v. Northside Sanitary Landfill, Inc.,* 1988 WL 147257, 18 Envtl. L. Rep. 20850, *20851 (S.D.Ind. 1988)).

The City only challenges the EPA's UAO and subsequent request for court ordered access on three grounds (elements three, four, and five). Consequently, the Court must first determine whether the EPA has demonstrated that there is a "reasonable basis to believe" that there may be a release of a hazardous substance, pollutant, or contaminant from the Site. Second, the Court must determine whether the City has interfered with the EPA's entry request, and third, whether the demand for entry was arbitrary and capricious, an abuse of discretion, or otherwise in violation of law.

### 1) Reasonable Basis

In order to gain access to a place, property, or location or issue an access order, the EPA must demonstrate that there is a "reasonable basis to believe" there may a release or a threat of a release of a hazardous substance. 42 U.S.C. § 9604(e)(1); 42 U.S.C. § 9604(e)(5)(B). The City argues that the EPA has failed to show on the administrative record that a release or threat of a release from the City-owned property will occur.[3] The City further argues that the potential for a release will actually be enhanced by the response action taken by the EPA. The City points to a study by the Agency for Toxic Substances and Disease Registry ("ATSDR") as well as a memorandum to the EPA following the May 1995 flood to support this contention.

Clearly, the pertinent question is whether the EPA has shown that there is a "reasonable basis to believe" that there may be a release at the Site. As the City has pointed out, there is some evidence that the EPA's response action could actually increase the potential for a release of

**3.** The Court summarily rejects the City's contention that the EPA must prove that there is a threat of release from the City's property. As noted by several courts, CERCLA does not make any "distinction between properties containing hazardous substances and those that are merely adjacent to such properties."

The statute authorizes entry to any property for the purpose of effectuating a response action. *Mountaineer,* 886 F.Supp. at 828; *Charles George,* 682 F.Supp. at 1272; *New Jersey Department of Environmental Protection v. Briar Lake Development Corp.,* 736 F.Supp. 62, 66 (D.N.J.1990).

CERCLA substances.[4] However, the Court's review is limited to whether the EPA's UAO is supported by the administrative record and *not* whether the EPA's decision is the correct one.

■ Upon examination of the administrative record, the Court concludes that the EPA's request for access and the subsequent issuance of the UAO is supported by the EPA's reasonable belief that there may be a release or a threat of a release of hazardous substances. During prior investigations and subsequent testing, which the City did not oppose, the EPA discovered that the soil at the Site contained a number of contaminants, including arsenic, lead and polynuclear aromatic hydrocarbons. (See UAO at paragraphs 11 & 12). Arsenic, lead and polynuclear aromatic hydrocarbons are hazardous substances under CERCLA. See 42 U.S.C. § 9601(14). As a result of the EPA's investigation, the Site was placed on the National Priorities List. Clearly, the EPA believes the removal action that it has proposed will "abate a release or a potential release" of the hazardous substances noted above, or at the very least prevent the public from having further contact with these hazardous substances. (See UAO at paragraphs 24 &

35). Consequently, based upon the clear existence of hazardous substances located at the site and the Site's inclusion in the National Priorities List, the Court concludes that the EPA has demonstrated that it has a "reasonable basis to believe that there may be a release or a threat of a release of hazardous substances" at the Site.[5]

### 2) Interference with the EPA's Access

■ In order to obtain court-ordered access, the City contends that the EPA must demonstrate that the City has done something that would interfere with the response action. The term "interference" is not defined in CERCLA. However, the court in *Northside Sanitary Landfill* concluded that the term "interference" should be "interpreted to mean conduct which could delay the cleanup schedule". *Northside Sanitary Landfill*, 18 Envtl. L. Rep. at *20851.[6] This Court believes that this definition is the proper definition to be applied under 42 U.S.C. § 9604(e)(5)(B). In the instant case, the City has clearly interfered with the EPA's attempt at cleaning up the Site. The City has attempted to "physically exclude" [7] the EPA from

---

**4.** The Court does not express any opinion as to the merits of the EPA's response action, or for that matter, the merits of the City's position that the response action could enhance the release of toxic substances. The Court merely points out that the City has offered contradictory evidence of the correctness of the EPA's decision.

**5.** Based upon similar evidence, several courts have concluded likewise. *See Mountaineer,* 886 F.Supp. at 828(court held that reasonableness of the EPA's request for access was "amply satisfied" by what an EPA manager smelled at the location and the fact that the property was included in the National Priorities List.); *Northside Sanitary Landfill,* 18 Envtl. L. Rep. at *20851(court held that even though the possible release of hazardous substances was "minimal", the EPA had demonstrated that there was a reasonable basis to believe there could be a release at a future date.); *In the Matter of Venus Laboratories, Inc.,* 1990 WL 172583, *1 (N.D.Ill.1990)(court held that soil samples analyses from the defendant's property, concluding that there

were hazardous substances, was "ample support" for the EPA's conclusion that there is a reasonable basis to believe that there may be a release or threat of a release at the defendant's facility); *United States v. M. Genzale Plating, Inc.,* 723 F.Supp. 877, 887 (E.D.N.Y. 1989)(court concluded that the location's placement on the National Priorities List, combined with two tests substantiating the release CERCLA substances was sufficient to satisfy the EPA's burden of showing a "reasonable basis").

**6.** The court defined the term based upon the "overarching purpose" of the statute, which is to provide quick remedial action in cleaning up hazardous waste sites. *See J.V. Peters & Co., Inc. v. Administrator, EPA,* 767 F.2d 263, 264 (6th Cir.1985).

**7.** The Court borrows this term from *Northside Sanitary Landfill* wherein the court examined several cases where the courts did not even discuss the issue of "interference" because, like the instant case, the defendants in *Charles*

their property. For example, on January 7, 1999, the City unequivocally denied access to the EPA via letter. In addition, the City also filed a complaint for a preliminary and permanent injunction to enjoin defendants from implementing continuing response efforts on the City's property at the Site, which was subsequently dismissed. Without question, the City has clearly engaged in conduct which has interfered with the EPA's response action.

### 3) Nature of the Demand for Entry

The City contends that the EPA's request for access and its issuance of the UAO to the City was "arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law". 42 U.S.C. § 9604(e)(5)(B)(i). The City further contends that the EPA's decision to allow other property owners at the Site to voluntarily grant or deny access but not allow the City the same right, constitutes an "arbitrary and capricious" decision by the EPA.[8] The EPA counters that since they had a "reasonable basis to believe" that there may be a release of hazardous sub-

stances, and that in fact hazardous substances have been found at the Site, the decision to request entry onto the City's property and then issue a UAO demanding access cannot be said to be "arbitrary and capricious". The Court agrees. Clearly, the EPA has demonstrated that there are hazardous substances located at the Site and that the City's property is located at the Site. In fact, the EPA has demonstrated that the contamination is significantly higher in the undeveloped portions (which is where the City's property is located) of the Site than the developed areas. An examination of the affidavits provided by the EPA, the Action Memorandum, and the UAO evidences that the EPA decision is reasonable, albeit possibly not the best solution to the problems at the Site. Consequently, the EPA's decision to issue the UAO directing the City to allow access to the City's property, for the purpose of undertaking remedial action, simply cannot be viewed as "arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law." [9]

---

*George, United States v. Long,* 687 F.Supp. 343 (S.D.Ohio 1987), and *United States v. Iron Mountain Mines, Inc.,* 1987 WL 46792 (E.D.Cal.1987) all "physically excluded" the government from their respective property.

**8.** The City is correct in noting that the Action Memorandum does state that the "right of entry access from the owners and residents must be obtained in the form of a consensual access agreement". However, this does not mean that the request for access is voluntary, as the City has argued. The EPA would still have the option of filing an enforcement action under 42 U.S.C. § 9604(e)(5) against a party who does not consent. This is the *exact* purpose of 42 U.S.C. § 9604(e)(5), which is to enable the EPA to order access, then possibly request a court to compel compliance, when a party will not consent to access. The inclusion of the language "This written permission is given by me voluntarily with knowledge of my right to refuse and without threats or promises of any kind." in the "Consent for Access" agreements given to some property owners at the Site, does *not* translate into a conclusion that the EPA has stated that the access requested is "voluntary". This language merely notes the that the party is entering into the agreement voluntarily. The fact

that the EPA notified the individuals but not the governmental entities that they had the right to refuse does not mean the entire process was "arbitrary and capricious", and certainly does not signify that the EPA is treating the City differently. The Court does not want to guess at the EPA's reasons for doing so, since they are not truly pertinent, but it is possible that the EPA knows that individuals may not be aware of their right to refuse access, which they do have under the CERCLA statute, whereas a governmental entity is more likely to be aware of their rights or be able to hire legal assistance to inform them of their right to deny access to the property. However, even if the party exercises this right of denial, the EPA could later bring an action under 42 U.S.C. § 9604(e)(5).

**9.** In the instant case, the EPA followed the proper procedures under CERCLA. The EPA requested the City to consent to access several times, but the City refused. The EPA then issued a UAO under 42 U.S.C. § 9604(e)(5)(A) ordering the City to allow access. After the City continued to refuse access and filed a complaint for injunction against the EPA, the EPA filed the instant enforcement action under 42 U.S.C. § 9604(e)(5)(B).

Based upon the "undemanding standard"[10] set forth in 42 U.S.C. § 9604(e)(5)(B) and noted above, the Court concludes the EPA's Motion for Order in Aid of Immediate Access should be granted.

Accordingly, for the above and foregoing reasons,

**IT IS ORDERED** that the Motion for Order in Aid of Immediate Access of the United States of America, on behalf of the U.S. Environmental Protection Agency, be and is hereby **GRANTED.**

**IT IS FURTHER ORDERED** that the Environmental Protection Agency, its officers, employees, or representatives may enter upon, move about, and remain on or about the property owned by the City of New Orleans, which is part of the Agricultural Street Superfund Site in New Orleans, for the purpose of taking a response action under CERCLA.

**IT IS FURTHER ORDERED** that the City of New Orleans is enjoined from obstructing, impeding, or otherwise interfering with the entry and access by EPA, its officers, employees, or representatives.

**IT IS FURTHER ORDERED** that this Order for access and injunctive relief shall terminate on the date on which all the tasks related to the remedial investigation/feasibility study, remedial design and remedial action are completed.

---

**10.** It was noted by the court in *Mountaineer,* 886 F.Supp. at 829 and by the court in *United States v. Fisher,* 864 F.2d 434, 438 (7th Cir. 1988) that the government's burden under 42 U.S.C. § 9604(e)(5)(B) is an "undemanding standard".