**ANCHOR POINTE BOAT–A–MINIUM ASSOCIATION, INC.,**
Plaintiff–Appellant,

v.

**Vern MEINKE, Meinke Marina West, and the United States of America,**
Defendants–Appellees.

**Nos. 87–3343, 87–3427.**

United States Court of Appeals, Sixth Circuit.

Argued May 5, 1988.

Decided Oct. 28, 1988.

---

Robert N. Dunn, Robert G. Lahiff (argued), Foster, Meadows & Ballard, P.C., Detroit, Mich., Fred E. Henning, Duffey & Henning, Toledo, Ohio, for plaintiff-appellant.

Paul Wingart, Neipp & Wingart, Toledo, Ohio, Gene W. Graves (argued), Oak Harbor, Ohio, for Vern Meinke, Meinke Marina West.

Thomas A. Karol, Asst. U.S. Atty., Toledo, Ohio, for the U.S.

Patrick J. Foley, Asst. U.S. Atty., Toledo, Ohio, for defendant-appellee.

Before KRUPANSKY and NELSON, Circuit Judges, and TODD, District Judge.[*]

KRUPANSKY, Circuit Judge.

Plaintiff-appellant Anchor Pointe Boat–A–Minium (Anchor Pointe), a marine condominium association organized under the laws of Ohio, appealed from the district court's entry of summary judgment in favor of defendants-appellees United States of America (government), Vern Meinke, and Meinke Marina West (Meinke Marina) in this action commenced to review the Army Corps of Engineers' (ACE) issuance of a permit allowing Meinke Marina to remove a dike giving its patrons access to Lake Erie through Anchor Pointe Channel. The record disclosed the following facts.

The land upon which Anchor Pointe is now located was, before the 1950's, nonnavigable farm and swamp land situated in Lucas County, Ohio on the southern shore of Lake Erie. In the 1950's, the land was excavated to produce boat slips as well as Anchor Pointe Channel which flows in a northerly direction into Lake Erie and provides access to the dock area. Prior to its excavation, the eastern boundary of the property was the western bank of Cooley Canal, a navigable waterway that also flows in a northerly direction into Lake Erie. Anchor Pointe Channel and Cooley Canal are parallel waterways separated by man-made dikes.

Lucas County (County) owns the property abutting Anchor Pointe's southern border, i.e., inland. The County has operated a public boat ramp on its land with access to the ramp through Anchor Pointe Channel pursuant to an easement from Anchor Pointe. Immediately south, i.e., inland, of the county's public boat ramp is a parcel of farm land which is bounded by Cooley Ca-

* The Honorable James D. Todd, United States District Judge for the Western District of Tennessee, sitting by designation.

nal on the eastern border. Meinke Marina adjoins the southern border of this parcel of farm land and is also bounded by Cooley Canal on the east.

On May 18, 1983, Meinke Marina filed an application with ACE for a permit to enlarge its facility by expanding to the north, i.e., on the farm land situated between Meinke Marina and the public boat ramp. As part of its expansion plan, it sought permission to dredge Cooley Canal and to remove a section of the dike separating Cooley Canal and Anchor Pointe Channel to permit access to its marina through Anchor Pointe Channel.

Anchor Pointe opposed the permit application asserting that Anchor Pointe Channel was private property, that increased boat traffic would erode its banks and that boats moored at Anchor Pointe would be damaged by wakes from additional boat traffic. Following a hearing, ACE approved Meinke Marina's permit application subject to its promise to post peak ingress and egress periods.

On June 29, 1984, Anchor Pointe commenced the present action in the United States District Court for the Northern District of Ohio claiming federal jurisdiction pursuant to the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.*, the Federal Tort Claims Act, 28 U.S.C. § 1346, and the Rivers and Harbors Act, 33 U.S.C. § 401 *et seq.* The only two claims asserted in the original and first amended complaint[1] were incorporated in paragraphs 21 and 22:

21. This proposed expansion will increase safety hazards to boaters in general and in particular to patrons of plaintiff, Anchor Pointe Boat–A–Minium, may result in shoreline erosion and amounts to a taking of plaintiff's, Anchor Pointe Boat–A–Minium, private property without compensation.

22. The U.S. Army Corps of Engineers' grant of a permit to defendant, Meinke Marina West, was arbitrary and capricious.

Anchor Pointe sought equitable relief in the form of an order permanently enjoining Meinke Marina from removing the dike and a "mandatory writ" ordering ACE to revoke the permit. Alternatively, Anchor Pointe sought an order requiring ACE to issue a permit for the construction of a dike, at Meinke Marina's expense, separating the two waterways and a permanent injunction prohibiting Meinke Marina patrons from using Anchor Pointe Channel.

On January 16, 1987, Anchor Pointe filed a motion for leave to file a second amended complaint seeking damages in excess of $10,000 for the alleged taking of its property. On March 11, 1987, the district court granted leave to file the second amended complaint and granted summary judgment in favor of the government. The court concluded that ACE's issuance of the permit was neither arbitrary nor capricious under the Administrative Procedure Act, 5 U.S.C. § 706, and that it did not confiscate Anchor Pointe's property without just compensation within the meaning of the Fifth Amendment. On April 6, 1987, the court dismissed without prejudice the claims against the remaining defendants, Vern Meinke and Meinke Marina, to allow Anchor Pointe to appeal the summary judgment order of March 11, 1987.

On April 8, 1987, Anchor Pointe belatedly filed a second amended complaint seeking damages against the government, Vern Meinke and Meinke Marina for the taking of its property and demanding all previously requested equitable relief. On April 10, 1987, Anchor Pointe filed a timely notice of appeal regarding the district court's March 11, 1987 order granting summary judgment in favor of the government and the April 6, 1987 order dismissing the remaining defendants. Thereafter, upon Anchor Pointe's request, the second amended complaint was formally dismissed by the district court on April 29, 1987, and Anchor Pointe timely appealed from that order, which appeal was consolidated with the April 10, 1987 appeal.

---

**1.** On February 4, 1986, Anchor Pointe filed its first amended complaint deleting the allegation of jurisdiction based upon the Federal Tort Claims Act and included a specific reference to the jurisdictional section of the Rivers and Harbors Act.

On appeal, Anchor Pointe argued only that the granting of the permit by the ACE amounted to a taking of its property without just compensation within the meaning of the Fifth Amendment.[2] In response, the government has contended that the district court was without jurisdiction to address Anchor Pointe's original and first amended complaint because Anchor Pointe only sought equitable relief. In addition, the government urged that Anchor Pointe's second amended complaint did not confer jurisdiction upon the district court because the Tucker Act, 28 U.S.C. § 1491, vests exclusive jurisdiction with the U.S. Court of Claims for actions seeking damages in excess of $10,000. For the reasons stated below, this court concludes that the government's position is well taken.

■ In its original and first amended complaint, Anchor Pointe sought only equitable relief based upon the taking of property without just compensation under the Fifth Amendment. Because the Fifth Amendment merely requires the party be compensated for the taking of private property, the district court was not empowered to award equitable relief. *Williamson Co. Regional Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 194, 105 S.Ct. 3108, 3120, 87 L.Ed.2d 126 (1985). Congress has only consented, pursuant to the Tucker Act, to suits brought for monetary relief against the United States as a result of the taking of private property.

Equitable relief is not available to enjoin an alleged taking of private property for a public use, duly authorized by law, when a suit for compensation can be brought against the sovereign subsequent to the taking. The Fifth Amendment does not require that compensation precede the taking. Generally, an individual claiming that the United States has taken his property can seek just compensation under the Tucker Act, 28 U.S. C. § 1491.

*Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1016–17, 104 S.Ct. 2862, 2880, 81 L.Ed. 2d 815 (1984) (footnotes and citations omitted). *See also Hurley v. Kincaid*, 285 U.S. 95, 104, 52 S.Ct. 267, 269, 76 L.Ed.2d 637 (1932). Even if the Government could be considered as having taken plaintiffs' land, plaintiffs are not entitled to injunctive relief. Their remedy is limited to seeking just compensation under the Tucker Act, 28 U.S.C. §§ 1346(a)(2) & 1491. Consequently, the district court lacked jurisdiction to entertain Anchor Pointe's claim couched solely in equitable relief.

In regards to Anchor Pointe's second amended complaint seeking damages for the alleged taking of its property, this court is without jurisdiction to address that claim because Anchor Pointe had voluntarily dismissed it without prejudice. *Management Investors v. United Mine Workers*, 610 F.2d 384, 393 (6th Cir.1979) ("The general rule is to be that a plaintiff who has requested and been granted or agreed to a voluntary dismissal of his action without prejudice cannot maintain or prosecute an appeal from the order of dismissal."); *Scholl v. Felmont Oil Corp.*, 327 F.2d 697, 700 (6th Cir.1964) (same).

■ Furthermore, even if the second amended complaint was properly before this court, the Tucker Act divests the district court of jurisdiction over Anchor Pointe's claim for damages in excess of $10,000.

The Tucker Act vests exclusive jurisdiction over money claims against the United States greater than $10,000 in the United States Claims Court. It is only under the terms of the Tucker Act that the United States waives its sovereign immunity to such claims, and this consent to suit is a jurisdictional prerequisite. It is not the nature of the cause of action which determines whether jurisdiction is vested in the district court or the

---

**2.** Anchor Pointe has advised this court in its brief that it does not appeal from the district court's determination that the issuance of the permit was neither arbitrary nor capricious under the Administrative Procedure Act, 5 U.S.C. § 706. Accordingly, that claim is not presently before this court.

Claims Court but rather the nature of the relief requested.

*Matthews v. United States*, 810 F.2d 109, 111 (6th Cir.1987) (footnote and citations omitted).[3] *See also Lenoir v. Porters Creek Watershed Dist.*, 586 F.2d 1081, 1087–88 (6th Cir.1978). Exclusive jurisdiction over Anchor Pointe's claim that the issuance of the permit amounted to a taking of its property without just compensation rested with the United States Claims Court. Accordingly, this court concludes that the district court lacked jurisdiction over Anchor Pointe's Fifth Amendment taking claim, and its resolution of that claim must, therefore, be vacated.[4]

For the foregoing reasons, the judgment of the district court is VACATED and the case is REMANDED to that court. Upon remand, the district court should determine whether it would be in the interest of justice to transfer this case to the United States Claims Court pursuant to 28 U.S.C. § 1631.[5]

---

**3.** District courts and the Claims Court have concurrent jurisdiction over claims for less than $10,000. 28 U.S.C. § 1346(a).

**4.** Although this court does not reach the merits of Anchor Pointe's claim, the district court did correctly conclude that no taking of private property was presented by the facts of this case because Anchor Pointe had previously opened its channel for public use by conveying an easement to the County for ingress and egress to the public boat ramp. *See Nollan v. California Coastal Comm'n*, —— U.S. ——, 107 S.Ct. 3141, 3145 n. 1, 97 L.Ed.2d 677 (1987) (although taking occurs when government requires property owner to allow "permanent and continuous right to pass to and fro," no taking occurs when the owner has previously opened his property to the public).

**5.** 28 U.S.C. § 1631 provides:

Whenever a civil action has been filed in a court as defined in section 610 of this title or an appeal, including a petition for review of administrative action, has been noticed for or filed with such a court and that court concludes that it is without jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been initiated at the time it was filed or noticed and the action or appeal should proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or notice for the court from which it is transferred.