**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**David B. FISHER,**
**Defendant–Appellant.**

No. 87–2940.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 28, 1988.
Decided Dec. 2, 1988.

**436**

John E. Hughes, Hoeppner, Wagner & Evans, Mark E. Schmidtke, Valparaiso, Ind., for defendant-appellant.

Michael P. Healy, Dept. of Justice, Washington, D.C., for plaintiff-appellee.

Before CUDAHY, POSNER, and EASTERBROOK, Circuit Judges.

POSNER, Circuit Judge.

This appeal from an order granting the Environmental Protection Agency access to David Fisher's land presents procedural and substantive questions arising from the EPA's efforts to enforce the latest episode in the Superfund saga—the Superfund Amendments and Reauthorization Act of 1986, Pub.L. 99–499, 100 Stat. 1613 (Oct. 17, 1986) (SARA), amending the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S. C. §§ 9601 *et seq.*

Fisher owns a 230–acre tract, mostly farmland (so we'll call it "the farm"), in northern Indiana. Before 1980 he had— through Fisher–Calo, a corporation he controls—used a portion of the land for the reclamation of solvents; the main site of Fisher–Calo's reclamation business, however, was about a half mile from the farm. In 1980 the EPA filed suit against Fisher and Fisher–Calo in the federal district court for the Northern District of Indiana under the Resource Conservation and Recovery Act (RCRA), 42 U.S.C. §§ 6901 *et seq.*, which authorizes the EPA to seek equitable relief against any handling, treatment, disposal, etc. of hazardous wastes that "may present an imminent and substantial danger to health or the environment." 42 U.S.C. § 6973(a). The EPA was concerned that hazardous wastes had leaked into groundwater from some of the 700 to 1,000 drums in which wastes from the reclamation business were stored. These drums were buried both under the farm and under the site of Fisher–Calo's main reclamation facility. Groundwater tests revealed contamination from chlorinated solvents, cyanide, and other toxic substances; and the contractor whom Fisher had hired to bury the drums informed the EPA that Fisher had told him to puncture as many drums as he could when burying them and that he had done so.

■ In 1982 Fisher and the EPA agreed to the entry of a consent decree in the Indiana litigation, under which Fisher would monitor the groundwater at three test wells (one on the farm) to "ensure the gradual and steady natural purging of the ground water." The decree authorized the EPA, "based on testing results or the receipt of new evidence, to apply to the court for additional relief as appears necessary to protect human life or the environment." The decree also authorized the EPA to go on both tracts to check on the testing. It contained a provision continuing the district court's jurisdiction in order to assure compliance with the consent decree, but the provision was superfluous: when a court issues an injunction, it automatically retains jurisdiction to enforce it. *McCall–Bey v. Franzen*, 777 F.2d 1178, 1183 (7th Cir.1985); cf. 11 Wright & Miller, Federal Practice & Procedure § 2961, at p. 599

(1973). In any event, the EPA has not sought further relief from the district court for the Northern District of Indiana.

On June 27, 1987, the EPA brought a brand-new suit—this suit—against Fisher. The suit is concerned solely with the farm; Fisher–Calo is not a party. The suit was filed in the federal district court for the Northern District of Illinois under CERCLA, as amended by SARA, rather than under RCRA, and behind it lay various events since the entry of the consent decree in 1982. Late that year Fisher–Calo's main site had earned the dubious distinction of being placed on the EPA's National Priorities List, a list of the nation's most hazardous toxic-waste sites. See 42 U.S.C. § 9605(a)(8)(B); 42 C.F.R. § 300.66. Almost 1,000 sites are now listed; Fisher–Calo's site is number 142. 40 C.F.R. pt. 300, App. B, at p. 884. Inclusion on the National Priorities List both authorizes the use of Superfund money to clean up the site and requires the site's past and present owners to make good the cost to the fund. See *Northside Sanitary Landfill, Inc. v. Thomas*, 849 F.2d 1516, 1517–18 (D.C.Cir. 1988).

After Fisher–Calo's main site had made the National Priorities List, the EPA conducted additional tests at the site to determine whether further clean-up measures beyond those required by the consent decree might be necessary. Fisher–Calo did not oppose this testing. The EPA's manager for the remedial project, in visits to the site and also to the farm, saw discarded waste drums, stained soil, and distressed vegetation, and he smelled the odors of various hazardous substances. On the basis of his reports the EPA decided that it needed greater access to the farm than the consent decree authorized, in order to investigate fully the nature and extent of the soil and groundwater contamination and decide on appropriate remedial measures at either the farm or Fisher–Calo's main site. When Fisher refused to allow the additional access sought to the farm, the EPA filed this suit.

CERCLA, as amended by SARA (please forgive our heavy use of acronyms, but it is unavoidable because the full names of the statutes are both cumbersome and uninformative), authorizes the EPA to enter property when "there is a reasonable basis to believe there may be a release or threat of release of a hazardous substance or pollutant or contaminant." 42 U.S.C. § 9604(e)(1). The release (actual or threatened) need not be on that property; the statute authorizes the EPA to enter any place where entry is necessary to determine the need for response or the appropriate response, and any place adjacent to such a place. See 42 U.S.C. §§ 9604(e)(1), (3). Unless the EPA's demand for access is "arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with the law," the district court to which the EPA applies shall mete out whatever equitable relief is necessary to prevent interference with the agency's entering. 42 U.S.C. § 9604(e)(5)(B)(i). These provisions are more draconian than the corresponding provisions on access in the RCRA, under which the first suit was filed. See 42 U.S.C. §§ 6927(a), 6934(a). The basic difference between the two suits, however, is that the first sought to enjoin Fisher and his corporation from handling, storing, or disposing of toxic wastes in a hazardous manner, whereas the second seeks to enjoin Fisher from interfering with the EPA's access to the farm to perform additional tests and, depending on what the tests show, to order additional steps taken to determine the hazards that the farm poses to the public health.

█ Fisher moved to dismiss this suit or alternatively to transfer it to the Northern District of Indiana under 28 U.S.C. § 1404(a) (*forum non conveniens*). On October 27, 1987, the district court, having earlier refused to transfer the suit, granted the EPA's request for immediate access and enjoined Fisher from interfering with the EPA's entry on to the farm. Fisher appeals from this order under 28 U.S.C. § 1292(a)(1), which authorizes appeals from the grant, denial, modification, etc. of preliminary injunctions without regard to finality. The district court denied a stay of the injunction pending appeal, as did we, and the EPA has begun to carry out a

program (of undetermined scope) for testing the farm's soil and groundwater.

Fisher portrays the actions of the EPA, abetted by Judge Zagel, as the epitome of bureaucratic arrogance and ineptitude. As Fisher tells it, the EPA brought this suit without even consulting the division of the agency that has charge of the 1980 suit, which by virtue of the consent decree remains pending in the Northern District of Indiana. (CERCLA and RCRA are enforced by different divisions of the EPA.) The new suit, he adds, is in blatant violation of the consent decree, which expressly authorizes the EPA to take further legal action regarding the toxic-waste problem on the Fisher properties *in the Northern District of Indiana suit.* Furthermore, due process was denied him, because Judge Zagel could not have read Fisher's voluminous filings before deciding the case; he admitted on the morning of October 27 that he hadn't read them and he issued his decision in favor of the EPA the same afternoon. And the order of access and accompanying injunction violate the takings clause of the Fifth Amendment because they place no limits on what the EPA can do on the farm. During the course of the first lawsuit the EPA drilled a total of 33 test wells on both tracts. It may now decide to drill so many wells on the farm that the farm will be Swiss cheese and Fisher's cattle will break their legs trying to graze.

The factual and legal realities are a little more complex than Fisher's affecting tale of governmental overreaching suggests. Fisher is a resident of Chicago, which is also the site of the EPA's regional headquarters. There is no doubt that the Northern District of Illinois has jurisdiction and no indication that it is an inconvenient forum. The principal witnesses work in Chicago. Should the judge want to visit Fisher's farm, he will have no problem, because it is less than an hour's drive from the federal courthouse in Chicago. Admittedly it makes no sense for two proceedings as closely related as the present suit and the consent-order proceeding to be going on in different courts before different judges; they should be consolidated. But why in Hammond or South Bend rather than Chicago? The previous suit was resolved in a consent decree entered with only minimal judicial involvement; so Fisher's argument that Judge Sharp (the judge who signed the consent decree) knows so much about the farm and its problems that he rather than Judge Zagel should preside over any consolidated proceeding is unrealistic.

■ Fisher's constitutional arguments are shallow. There is no indication that he has any fact-sensitive defense to the EPA's demand for access, and hence there is no reason to believe that if Judge Zagel had read more deeply in Fisher's voluminous filings he would—or more to the point could—have decided against the EPA. Recall that CERCLA, as amended by SARA, requires the district court to grant such equitable relief as may be required to assure the EPA's access to a site, provided only that the agency's demand for access, grounded in "a reasonable basis to believe there may be a release or threat of release of a hazardous substance," is not "arbitrary and capricious, an abuse of discretion," or otherwise illegal. This undemanding standard was amply satisfied not only by what the EPA's manager saw and smelled on the farm but by the inclusion—not contested by Fisher—of the Fisher–Calo main site high on the National Priorities List. The proximity of the main site to the farm and the fact that the farm had been used to store wastes from the main site gave ample reason to believe that further investigation of the farm might be necessary for the protection of human health. The statute requires no more. Compare *United States v. Charles George Trucking Co.,* 682 F.Supp. 1260, 1264–66 (D.Mass.1988). Judge Zagel was wise to save his time and energy for cases in which a study of the factual record might make a difference.

■ The takings argument is premature; it is also frivolous. There is no indication that the EPA is engaging in or has plans to engage in activities on the farm that would be so disruptive as to constitute a taking of

the property. Cf. *Hendler v. United States*, 11 Cl.Ct. 91 (1986). Should that happen Fisher would have a monetary remedy in the United States Claims Court under the Tucker Act, 28 U.S.C. § 1491; see *Hendler v. United States, supra*—and that remedy would be exclusive. See, e.g., *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1016, 104 S.Ct. 2862, 2879–80, 81 L.Ed.2d 815 (1984); *Anchor Pointe Boat-A–Minium Ass'n, Inc. v. Meinke*, 860 F.2d 215 (6th Cir.1988); *Ramirez de Arellano v. Weinberger*, 745 F.2d 1500, 1551 (D.C.Cir. 1984) (Scalia, J., dissenting), vacated as moot, 471 U.S. 1113, 105 S.Ct. 2353, 86 L.Ed.2d 255 (1985); see also 42 U.S.C. § 9613(h); *South Macomb Disposal Authority v. EPA*, 681 F.Supp. 1244 (E.D. Mich.1988).

 Fisher's remaining argument is that the present suit is barred by the consent decree in the earlier one. A consent decree is res judicata and thus bars either party from reopening the dispute by filing a fresh lawsuit. See, e.g., *United States v. Athlone Industries, Inc.*, 746 F.2d 977, 983 and n. 5 (3d Cir.1984); *I.A.M. National Pension Fund v. Industrial Gear Mfg. Co.*, 723 F.2d 944, 947 (D.C.Cir.1983); *USM Corp. v. SPS Technologies, Inc.*, 694 F.2d 505, 507 (7th Cir.1982); *Nash County Board of Education v. Biltmore Co.*, 640 F.2d 484, 486–87 (4th Cir.1981); 18 Wright, Miller & Cooper, Federal Practice and Procedure § 4443, at p. 385 (1981). Alternatively, it is a contract in which the parties deal away their right to litigate over the subject matter. See *Alliance to End Repression v. United States*, 742 F.2d 1007, 1011 (7th Cir.1984) (en banc), and cases cited there. The dissatisfied party's only recourse, as Fisher tirelessly argues, is to seek a modification of the decree from the court that issued it—a course studiously not followed by the EPA in this case. The passage of a new statute, although it may require the modification of the decree, see *System Federation No. 91 v. Wright*, 364 U.S. 642, 650–53, 81 S.Ct. 368, 372–74, 5 L.Ed.2d 349 (1961); *Williams v. Butz*, 843 F.2d 1335 (11th Cir.1988); *Williams v. Atkins*, 786 F.2d 457 (1st Cir.1986), does not alter the general principle that a consent decree bars a fresh lawsuit arising from the same dispute that underlay the litigation in which the decree was entered.

But that is in general, not in every case; in the circumstances of this case we do not think the only course open to the EPA was to seek modification of the Indiana decree. (The District of Columbia Circuit rejected an argument similar to Fisher's in *Duquesne Light Co. v. EPA*, 698 F.2d 456, 469–70 (D.C.Cir.1983).) To begin with, there is no indication that all the hazardous leakage with which the EPA is concerned occurred before the entry of the decree, and leakage occurring afterward would create a fresh cause of action. There is a broader point. The Superfund amendments under which the present suit was filed were enacted four years after the consent decree was signed. The amendments direct the EPA in no uncertain terms to take peremptory steps to protect the public health. The EPA has no authority to refuse to enforce the statute just because its staff made commitments before Congress spoke. It is, if not quite relevant, at least interesting, to note that the consent decree in the Indiana litigation was entered at a time when the EPA's regulation of toxic-waste sites apparently was lax. See Developments in the Law, *Toxic Waste Litigation*, 99 Harv.L.Rev. 1458, 1505–06 (1986); Comment, *Consent Decrees Under the Superfund Amendments and Reauthorization Act of 1986: Controlling Discretion With Procedure*, 1987 U.Chi. Legal Forum 451, 452–55.

Fisher could have protected himself by insisting that the consent decree include a provision terminating his obligations under the decree if the EPA brought a new suit against him under a newly enacted statute. Indeed, he can if he wants move to vacate the decree in the district court for the Northern District of Indiana. But he cannot prevent the EPA from enforcing the new law.

AFFIRMED.