142 F.3d 439
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Hector R. DEJESUS, Plaintiff-Appellant,
v.
James R. EDGAR, et al., Defendants-Appellees.
 No. 97-1818.
 United States Court of Appeals,
Seventh Circuit.
 .
Submitted March 12, 1998*.
Decided April 1, 1998.
 
 Appeal from the United States District Court for the Central District of Illinois, No. 95 C 1482, Michael M. Mihm, Judge.
 Before Hon. RICHARD A. POSNER, Chief Judge, Hon. WALTER J. CUMMINGS, and Hon. KENNETH F. RIPPLE, Circuit Judges.
 
 ORDER
 
 1
 Hector R. DeJesus, a state court prisoner, filed this civil rights lawsuit pursuant to 28 U.S.C. § 1983 against seven Illinois officials. DeJesus alleged that the defendants violated his constitutional rights by refusing to grant him protective custody status based on his allegedly hostile relationship with the Latin Kings Gang and being deliberately indifferent to his safety. DeJesus also filed a petition for class certification and for injunctive relief. The district court denied DeJesus's class certification and injunctive relief requests, and then granted the defendants' motion for summary judgment. DeJesus appeals these determinations. We affirm.
 
 
 2
 In April of 1995, DeJesus was transferred from Menard Correctional Center to Pontiac Correctional Center. Fearing that he would be housed among the general prison population, DeJesus requested protective custody status based on his allegedly hostile relationship with the Latin Kings Gang. The prison's Assignment Committee denied DeJesus's request, however, because DeJesus failed to identify a single person who had threatened him since his arrival at Pontiac. DeJesus appealed the denial to the Administrative Review Board, which rejected his appeal. DeJesus was then ordered to move from protective custody--where he had been permitted to live pending the outcome of his appeal--to the general prison population. DeJesus refused his housing assignment, however, and was placed in segregation, where he remained until his transfer to Statesville Correctional Center on May 15, 1996. From the segregation unit, DeJesus appealed his case to the Director of the Illinois Department of Corrections, who shortly thereafter rendered his concurrence with the decision to deny DeJesus protective custody status.
 
 
 3
 DeJesus first argues on appeal that the district court erred in failing to find that he had "an expectation of a protected liberty interest to remain in protective custody" until the Director of the Illinois Board of Corrections made a final decision on his appeal. There is no merit to this claim because DeJesus does not have a liberty interest in remaining in protective custody. Smith v. Shettle, 946 F.2d 1250, 1254 (7th Cir.1991); Kellas v. Lane, 923 F.2d 492, 495 (7th Cir.1990).
 
 
 4
 DeJesus also argues that he was denied equal protection of the laws when he was transferred out of protective custody during the pendency of his appeal to the Director of the Board Corrections because a Joliet Correctional Center inmate was allowed to remain in protective custody during the pendency of his own appeal to the Director. However, the documentation submitted as proof of this claim does not indicate that this other prisoner was permitted to remain in protective custody. Moreover, DeJesus fails to state a proper cause of action under the Equal Protection Clause because he does not allege that he belongs to a protected class of citizens. See Hutchinson v. Spink, 126 F.3d 895, 901 (7th Cir.1997).
 
 
 5
 Next, DeJesus appeals the district court's conclusion that he failed to submit proof of his claim that he was evicted from protective custody in retaliation for complaining about prison conditions and for acting as a prison litigator. To state a claim of retaliatory treatment for the exercise of a constitutionally protected right, DeJesus must allege a chronology of events from which retaliation may be inferred. Black v. Lane, 22 F.3d 1395, 1399 (7th Cir.1994). Moreover, DeJesus must show that he would have been placed in protective custody were it not for the fact that he filed lawsuits against prison officials and served as a prison litigator. Babcock v. White, 102 F.3d 267, 275 (7th Cir.1996). DeJesus fails both of these inquiries. First, his chronology of events does not permit the inference that the denial of protective custody status was in retaliation for complaining about conditions and filing lawsuits. Two of his lawsuits were filed years before the decision to deny him protective custody status. As for the events that are more temporally relevant, such as an incident involving the alleged removal of his property, there is no indication that the officials who removed his property had anything to do with the denial of protective custody. Second, DeJesus does not meet his burden of showing that he would have been granted protective custody but for the defendants' retaliatory animus. Pontiac prison officials require inmates seeking protective custody status to indicate specifically why they need such protection. DeJesus was not able to identify a single person residing at Pontiac who had threatened him since his arrival in 1995. Nothing in the record indicates that this outcome would have been different but for the fact that DeJesus complained about prison conditions and filed lawsuits on behalf of himself and his fellow prisoners.
 
 
 6
 Next, DeJesus appeals the district court's denial of his petition for class certification. The district court concluded that the issues raised in DeJesus's complaint that he sought to resolve on behalf of a class of non-gang affiliated inmates at Pontiac already had been litigated in 1995 in a major class action lawsuit, Inmate A, et al. v. Peters, et al. (Case No. 89-2046), which culminated in a consent decree. Although DeJesus contends that the Inmate A consent decree does not have a preclusive effect on this case, this argument lacks merit. The doctrine of res judicata precludes a party from filing a second suit where "a single core of operative facts form[ed] the basis of both lawsuits." Prochotsky v. Baker & McKenzie, 966 F.2d 333, 335 (7th Cir.1991) (citation omitted). It is well-settled that a consent decree is a final judgment on the merits that "bars either party from reopening the dispute by filing a fresh lawsuit." United States v. Fisher, 864 F.2d 434, 439 (7th Cir.1988). In this case, all the elements of res judicata are met: (1) a final judgment on the merits; (2) an identity of the cause of action in both suits; and (3) and an identity of the parties or their privies. Prochotsky, 966 F.2d at 334. Accordingly, the district court did not abuse its discretion when it denied DeJesus's request for class certification. See Mace v. Van Ru Credit Corp., 109 F.3d 338, 340 (7th Cir.1997).
 
 
 7
 DeJesus also contends that the district court erred in denying his request for injunctive relief, his discovery requests, and his motion for an evidentiary hearing. We need not address the validity of the district court's determination regarding injunctive relief, however, because the matter is rendered moot by the fact that DeJesus no longer is confined at Pontiac and he does not point to anything in the record indicating that a return to Pontiac's segregation unit is likely. Higgason v. Farley, 83 F.3d 807, 811 (7th Cir.1996). Indeed, this court must assume that DeJesus will abide by prison rules and thus avoid a return to segregation. Knox v. McGinnis, 998 F.2d 1405, 1413 (7th Cir.1993). As for the discovery and evidentiary matters, the district court retained broad discretion to rule on these matters, and this court will not reverse absent an abuse of discretion. See United States v. Saulter, 60 F.3d 270, 275 (7th Cir.1995); Ross v. Black & Decker, Inc., 977 F.2d 1178, 1185 (7th Cir.1992). Because the district court correctly concluded that DeJesus's class action aspirations were barred by the entry of the Inmate A consent decree, the district court did not abuse its discretion in denying DeJesus's evidentiary and discovery motions as irrelevant and unduly burdensome.
 
 
 8
 Finally, DeJesus alleges that the district court erred in ruling that the defendants did not violate his Eighth Amendment rights. Among other things, he contends that the defendants violated his rights when they placed him in segregation for nine months; permitted him to shower only once a week; confined him in an unsanitary and improperly ventilated cell; confined him to his cell twenty-four hours a day during lockdowns; and permitted him to go outside for only a half hour a day when not under a lockdown. None of these claims amounts to a constitutional violation, however. In Davenport v. DeRobertis, 844 F.2d 1310, 1316-17 (7th Cir.1988), we found constitutionally sufficient one shower per week for inmates confined in segregation at Statesville. The record in this case does not lead us to conclude that a segregation inmate at Pontiac has greater hygienic needs that, left unmet, give rise to a constitutional violation. As for DeJesus's complaints about the conditions in segregation, we have indicated that an inmate's refusal to leave segregation and take a housing assignment elsewhere can be construed as an indication that he voluntarily accepted the conditions in segregation. See Williams v. Ramos, 71 F.3d 1246, 1249-50 (7th Cir.1995). See also Johnson v. Pelker, 891 F.2d 136, 138-39 (7th Cir.1989). Nor did the lack of exercise or frequent lockdowns violate DeJesus's constitutional rights. See Thomas v. Ramos, 130 F.3d 754, 764 (7th Cir.1997).
 
 
 9
 DeJesus also argues that the defendants violated his Eighth Amendment rights when they evicted him from protective custody and were deliberately indifferent to his safety. This claim also fails. While the Eighth Amendment imposes a duty on prison officials to " 'take reasonable measures to guarantee the safety of the inmates,' " Bagola v. Kindt, 131 F.3d 632, 646 (7th Cir.1997) (quoting Farmer v. Brennan, 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)), officials must intentionally ignore a known risk in order to be held liable. Id.; Luttrell v. Nickel, 129 F.3d 933, 935 (7th Cir.1997). In this case, the defendants were not deliberately indifferent to DeJesus's safety. When DeJesus claimed that he needed protective custody, the defendants investigated his request but found that he provided no concrete evidence of a threat to his safety. DeJesus was permitted to appeal this determination, and the defendants found that DeJesus was unable to point to a single person who had threatened him since his arrival at Pontiac in 1995. These actions show that the defendants did not ignore a known risk to DeJesus's safety, and their decision to remove him from protective custody status consequently was not a violation of the Eighth Amendment.
 
 
 10
 For the foregoing reasons, the rulings of the district court are AFFIRMED.
 
 AFFIRMED
 
 
 *
 After an examination of the briefs and the record, we have concluded that oral argument is unnecessary, and the appeal is submitted on the briefs and the record. See Fed.R.App.P. 34(a); Cir.R. 34(f)