In the

# United States Court of Appeals

### For the Seventh Circuit

_____

No. 07-2133

GUSTAVO ENRIQUE ALVEAR-VELEZ,

*Petitioner*,

*v.*

MICHAEL B. MUKASEY, Attorney
General of the United States,

*Respondent*.

_____

Petition for Review of an
Order of the Board of Immigration Appeals.
No. A42-281-319

_____

ARGUED APRIL 1, 2008—DECIDED SEPTEMBER 2, 2008

_____

Before CUDAHY, RIPPLE and ROVNER, *Circuit Judges*.

RIPPLE, *Circuit Judge.* Gustavo Enrique Alvear-Velez, a
native and citizen of Colombia, was admitted lawfully
into the United States in 1990. In 1999, the Immigration
and Naturalization Service ("INS"), now the Department
of Homeland Security ("DHS"), commenced removal
proceedings against Mr. Alvear-Velez on the ground that
he had been convicted of an aggravated felony. *See* 8 U.S.C.

§ 1227(a)(2)(A)(iii); *id.* § 1101(a)(43)(A). The immigration judge ("IJ") terminated the proceedings based on Mr. Alvear-Velez's res judicata defense, but, on appeal, the Board of Immigration Appeals ("BIA" or "Board") determined that the IJ had erred in applying res judicata. The Board then remanded the case to the IJ.

On remand, Mr. Alvear-Velez applied for a waiver of deportability under former-section 212(c) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(c) (repealed 1996). The IJ determined that Mr. Alvear-Velez was removable based on a 1993 sexual assault conviction and also determined that he was statutorily ineligible for a section 212(c) waiver based on *In re Blake*, 23 I. & N. Dec. 722 (BIA 2005). Mr. Alvear-Velez appealed the IJ's decision, but the BIA dismissed the appeal. Mr. Alvear-Velez timely petitioned for review of the BIA's decision.[1]

---

[1] Under 8 U.S.C. § 1252(a)(1), we have jurisdiction to review final orders of removal issued by the Board. In cases where an alien has been found removable on the ground that he committed an aggravated felony offense, as is the case here, our jurisdiction is limited to reviewing "constitutional claims" and "questions of law." *See* 8 U.S.C. §§ 1252(a)(2)(C), (D). All of Mr. Alvear-Velez's arguments satisfy this requirement. The application of res judicata is a question of law, and therefore we have jurisdiction to review Mr. Alvear-Velez's challenge on that ground. *See Hamdan v. Gonzales*, 425 F.3d 1051, 1056-57 (7th Cir. 2005); *see also Channer v. Dep't of Homeland Sec.*, 527 F.3d 275, 279 (2d Cir. 2008) ("As several of our sister Circuits have held, the application of res judicata is an issue of law that we have jurisdiction to review.").

For the reasons set forth in this opinion, we deny Mr. Alvear-Velez's petition for review.

## I

## BACKGROUND

Mr. Alvear-Velez is a native and citizen of Colombia. He entered the United States as a lawful permanent resident on October 6, 1990, at the age of 15. Mr. Alvear-Velez's entire immediate family resides in the United States. On April 30, 1993, he pleaded guilty to criminal sexual assault by a family member, in violation of Illinois law. He was sentenced to "periodic imprisonment" for twelve months and supervised probation for forty-eight months, and he served eight months of his imprisonment in a work-release program. A.R. at 247.

In 1994, the immigration authorities commenced deportation proceedings against Mr. Alvear-Velez based on his criminal sexual assault conviction, charging him with having been convicted of a crime involving moral turpitude within five years of entry, for which he was sentenced to imprisonment or actually confined for one year or more. *See* 8 U.S.C. § 1251(a)(2)(A)(i) (renumbered in 1996). Mr. Alvear-Velez moved to terminate the proceedings. He argued that his crime was not one of moral turpitude and that he had not been sentenced to confinement or actually confined for one year or more.

During the course of those deportation proceedings, the IJ determined that the crime was one of moral turpitude, but that Mr. Alvear-Velez had not been sentenced to

imprisonment or confined for more than a year. Consequently, the IJ terminated the deportation proceedings. The INS filed an appeal, which it subsequently withdrew. Accordingly, the IJ's order of June 14, 1994, dismissing the deportation proceedings became a final administrative order. *See* 8 C.F.R. § 1003.39.

On June 14, 1999, Mr. Alvear-Velez reported to the police station to register as a sexual offender, as he was required to do every year. The police determined that he had missed a prior reporting date because he had moved in the interim and therefore arrested him. On June 18, 1999, the DHS served him with a notice to appear in removal proceedings to answer the charge that, under 8 U.S.C. § 1227(a)(2)(A)(iii), he was subject to removal as an alien convicted of an aggravated felony as defined by 8 U.S.C. § 1101(a)(43)(A). The predicate felony was Mr. Alvear-Velez's 1993 conviction, the same conviction that had served as the basis for his 1994 deportation proceedings.

Mr. Alvear-Velez, through counsel, contended that res judicata barred the DHS from initiating proceedings a second time using the same conviction. The IJ agreed. The DHS appealed, and the BIA sustained the appeal, vacated the IJ's decision and remanded the case for further proceedings. The Board explained that, although both immigration proceedings were based on the same 1993 conviction, "the law governing immigration consequences of criminal convictions ha[d] changed significantly" since the prior proceedings. A.R. at 248. The Board noted that the definition of aggravated felony had been expanded to include sexual abuse of a minor. "In view of this change

in law," the Board continued, "we find that the doctrine of res judicata does not preclude the Service from relying on the 1993 conviction to pursue the respondent's deportation." *Id.*

On remand to the IJ, Mr. Alvear-Velez indicated an intention to seek waiver of his removal under INA § 212(c), 8 U.S.C. § 1182(c) (repealed 1996).[2] The proceedings were continued twice, and, in the interim, the BIA issued its ruling in *In re Blake*, 23 I. & N. Dec. 722 (BIA 2005). In that decision, the BIA held that an alien deportable because of a conviction for sexual abuse of a minor is not eligible for a section 212(c) waiver because there is no statutory counterpart of that ground of deportability in the enumerated grounds of inadmissibility in section 212(a) of the INA. When Mr. Alvear-Velez's removal proceedings recommenced, the IJ held that, based on *Blake*, Mr. Alvear-Velez was ineligible for a section 212(c) waiver.

Mr. Alvear-Velez timely appealed to the BIA. The BIA determined that Mr. Alvear-Velez's 1993 Illinois conviction qualifies as an aggravated felony for sexual abuse of a minor, which rendered him ineligible for a section 212(c) waiver. The Board accordingly dismissed the appeal.

---

[2] *See also INS v. St. Cyr*, 533 U.S. 289, 295-96 (2001) (holding that section 212(c) waivers remain available to aliens who pleaded guilty to an aggravated felony prior to the effective date of the repeal and who would have been eligible for relief under the law then in effect). *See generally Valere v. Gonzales*, 473 F.3d 757, 759-60 (7th Cir. 2007) (discussing section 212(c) waivers).

Mr. Alvear-Velez timely petitioned for review of the BIA's decision.


## II

## DISCUSSION

Mr. Alvear-Velez challenges the BIA's decision on several grounds. First, he contends that the doctrine of res judicata bars the immigration authorities from instituting removal proceedings based on the same criminal conviction that had formed the basis of their prior, unsuccessful deportation effort. Second, he submits that the removal proceedings instituted in this case violate the transitional rules governing the implementation of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-208, § 309, 110 Stat. 3009, 3009-625-27. Third, Mr. Alvear-Velez claims that the instant removal proceedings violate established immigration procedures because the DHS could have filed a motion to reopen his original deportation proceedings rather than commencing removal proceedings in 1999. Fourth, Mr. Alvear-Velez contends that the DHS violated his substantive due process rights by instituting these proceedings.[3]

---

[3] In his main brief, Mr. Alvear-Velez also challenged the Board's determination that, under *In re Blake*, 23 I. & N. Dec. 722 (BIA 2005), his 1993 conviction for criminal sexual assault cannot be waived under section 212(c) of the INA. At oral argument,

(continued...)

**A.**

We first turn to Mr. Alvear-Velez's contention that the Board committed legal error in determining that the doctrine of res judicata did not prevent the DHS from charging him as being removable based on the same criminal conviction for which he previously was found not to be deportable.

The applicability of res judicata hinges on three elements: "(1) an identity of the parties or their privies; (2) identity of the cause of action; and (3) a final judgment on the merits." *Prochotsky v. Baker & McKenzie*, 966 F.2d 333, 334 (7th Cir. 1992). The second element—identity of the cause of action—is determined by using the "operative facts" or "same transaction" test. *In re Matter of Energy Co-op., Inc.*, 814 F.2d 1226, 1230 (7th Cir. 1987). Under this formulation, a cause of action consists of "a core of operative facts which give rise to a remedy." *Id.* Relatedly, res judicata also prevents a party from "splitting a single cause of action [or] . . . using . . . several theories of recovery as the basis for separate suits." *Shaver v. F.W. Woolworth Co.*, 840 F.2d 1361, 1365 (7th Cir. 1988); *see also Prochotsky*, 966 F.2d at 334 (noting that this "prevents vexatious litigation"). The doctrine of res judicata minimizes "the expense and vexation attending multiple

---

[3] (...continued)
however, Mr. Alvear-Velez conceded that this argument was foreclosed by our decisions in *Valere v. Gonzales*, 473 F.3d 757 (7th Cir. 2007), and *Zamora-Mallari v. Mukasey*, 514 F.3d 679 (7th Cir. 2008). Accordingly, we shall not discuss these arguments.

lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." *Montana v. United States*, 440 U.S. 153, 153-54 (1979).

As a general matter, res judicata applies to administrative hearings if "the administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it where the parties have had an adequate opportunity to litigate." *United States v. Utah Constr. & Mining Co.*, 384 U.S. 394, 422 (1966); *see also Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 107-08 (1991). Also, and more specifically, res judicata applies to the "adjudication of petitions for relief in immigration courts." *Hamdan v. Gonzales*, 425 F.3d 1051, 1059 (7th Cir. 2005); *see also Medina v. INS*, 993 F.2d 499, 503-04 (5th Cir. 1993); *Matter of Barragan-Garibay*, 15 I. & N. Dec. 77, 78-79 (BIA 1974). Notably, however, we have applied res judicata much more flexibly in the administrative context. *Int'l Harvester Co. v. OSHA*, 628 F.2d 982, 986 (7th Cir. 1980) ("This court does not adhere to a rigid view of the doctrine in the administrative context."); *see also Collins v. Pond Creek Mining Co.*, 468 F.3d 213, 229 n.3 (4th Cir. 2006) ("[R]es judicata of administrative decisions is not encrusted with rigid finality that characterizes the precept in judicial proceedings."); *Bravo-Pedroza v. Gonzales*, 475 F.3d 1358, 1359 (9th Cir. 2007); *Sharp Kabushiki Kaisha v. Thinksharp, Inc.*, 448 F.3d 1368, 1372 (Fed. Cir. 2006); *Facchiano v. U.S. Dep't of Labor*, 859 F.2d 1163, 1167 (3d Cir. 1988).

In *United States v. Fisher*, 864 F.2d 434 (7th Cir. 1988), for example, the Environmental Protection Agency ("EPA")

had entered into a consent decree with respect to a large tract of land in northern Indiana used for the reclamation of solvents. Several years later, and after Congress had amended the relevant environmental statute to create new avenues of action, the EPA brought a new suit rather than seeking to modify the consent decree. We explained that, under res judicata, consent decrees normally prevent a new "lawsuit arising from the same dispute that underlay the litigation in which the decree was entered." *Id.* at 439. Under the circumstances of the case, however, and given the statutory change in the interim, we held that the EPA was justified in commencing a new action:

> The Superfund amendments under which the present suit was filed were enacted four years after the consent decree was signed. The amendments direct the EPA in no uncertain terms to take peremptory steps to protect the public health. The EPA has no authority to refuse to enforce the statute just because its staff made commitments before Congress spoke.

*Id.*

As *Fisher* suggests, in determining whether the doctrine of res judicata should be applied with less rigidity than usual, courts have placed great weight on the identity of the institution of government responsible for the change in law. Notably, although changes in case law almost never provide a justification for instituting a new action arising from the same dispute that already has been litigated to a final judgment, statutory changes that occur after the previous litigation has con-

cluded may justify a new action. *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398-99 (1981); *Fisher*, 864 F.2d at 439; 18 James Wm. Moore et al., Moore's Federal Practice, ¶ 131.22[3] (3d ed. 1999) (noting that "[p]assage of a new statute will not *per se* create grounds for a new claim," but, "when a new statute provides an independent basis for relief which did not exist at the time of the prior action, a second action based on the new statute may be justified."). *Compare Moitie*, 452 U.S. at 398-99 (holding that considerations of fairness and equity do not vitiate the res judicata effect of a previous, unappealed judgment, even if that judgment "rest[s] on a legal principle subsequently overruled in another case"), *with Astoria Fed. Sav. & Loan Ass'n*, 501 U.S. at 107-08 (noting that Congress may abrogate res judicata implicitly in the administrative context if the doctrine's application would contravene a statutory purpose).

Additionally, the rule against claim splitting, which is one component of res judicata, is inapplicable when a statutory change creates a course of action unavailable in the previous action. *Cf. Car Carriers, Inc. v. Ford Motor Co.*, 789 F.2d 589, 593-94 (7th Cir. 1986) ("[P]rior litigation acts as a bar not only to those issues which were raised and decided in the earlier litigation but also to those issues which *could* have been raised in that litigation." (emphasis in original)); *see also Wedow v. City of Kansas City, Mo.*, 442 F.3d 661, 669 (8th Cir. 2006) (noting that the rule against claim splitting "does not apply to claims that did not exist when the first suit was filed"). Indeed, courts consistently have refused to apply res judicata to preclude a second suit that is based on a claim

that could not have been asserted in the first suit. *See Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 142 F.3d 26, 38 (1st Cir. 1998) ("Of course, res judicata will not attach if the claim asserted in the second suit could not have been asserted in the first.").[4]

---

[4] *See also Computer Assoc. Int'l, Inc. v. Altai, Inc.*, 126 F.3d 365, 370 (2d Cir. 1997) ("Even where a second action arises from some of the same factual circumstances that gave rise to a prior action, res judicata is inapplicable if formal jurisdictional or statutory barriers precluded the plaintiff from asserting its claims in the first action."); *Clark v. Bear Stearns & Co.*, 966 F.2d 1318, 1321 (9th Cir. 1992) ("If a claim could not have been asserted in prior litigation, no interests are served by precluding that claim in later litigation."); *Kale v. Combined Ins. Co.*, 924 F.2d 1161, 1167 (1st Cir. 1991) ("In general, the rule requiring all claims arising from a single cause of action to be asserted in a single lawsuit will not apply if the plaintiff was unable to assert a particular claim or theory in the original case 'because of the limitations on the subject matter jurisdiction of the courts.'" (quoting Restatement (Second) of Judgments § 26(1)(c) (1982))); *Browning v. Navarro*, 887 F.2d 553, 558 (5th Cir. 1989) ("It is black-letter law that a claim is not barred by res judicata if it could not have been brought. If the court rendering judgment lacked subject-matter jurisdiction over a claim or if the procedural rules of the court made it impossible to raise a claim, then it is not precluded."); 18 Wright, Miller & Cooper, Federal Practice and Procedure § 4412, at 276 (2d ed. 2002) ("Limitations on the jurisdiction or the nature of the proceedings brought in a first court may justify relaxation of the general requirement that all parts of a single claim or cause of action be advanced.").

It is worth noting, however, that the "argument that it was not possible to bring all related theories of recovery or demands

(continued...)

In the present case, when the immigration authorities first sought to deport Mr. Alvear-Velez based on his 1993 Illinois conviction for sexual assault, they had to rely on the ground that he had been convicted of a crime involving moral turpitude within five years of entry, A.R. at 247 (noting that Mr. Alvear-Velez was charged as deportable under 8 U.S.C. § 1251(a)(2)(A)(i)); at the time that this earlier deportation proceeding was instituted, Mr. Alvear-Velez's conviction for sexual assault did not qualify as an aggravated felony, *see* 8 U.S.C. § 1101(a)(43) (1995). In 1996, however, Congress amended the statutory definition of aggravated felony, another ground for removal, to include sexual abuse of a minor, and it specifically applied that new definition retroactively "regardless" of how long ago the "conviction was entered." IIRIRA, §§ 321(a)(1) & (b), 110 Stat. at 3009-628 (codified at 8 U.S.C. § 1101(a)(43)(A)); *Flores-Leon v. INS*, 272 F.3d 433, 439 (7th Cir. 2001) (holding that "Congress has clearly manifested an intent to apply the amended definition of 'aggravated felony' retroactively"). After the passage of IIRIRA, therefore, Mr. Alvear-Velez's 1993 Illinois conviction for sexual assault did qualify as an aggravated felony. Consequently, Congress provided the immigra-

---

[4] (...continued)
for relief in a first action may not overcome a claim-preclusion defense *if* the plaintiff could have made it possible." 18 Wright, Miller & Cooper, *supra*, § 4409, at 246 (emphasis added); *see also Supporters to Oppose Pollution, Inc. v. Heritage Group*, 973 F.2d 1320, 1326-27 (7th Cir. 1992) (noting that the exception to this rule does not extend to situations where the "claim-splitting flows from the plaintiff's choice").

tion authorities with a new ground upon which to institute removal proceedings—a ground that had not been available when the immigration authorities had first sought to deport Mr. Alvear-Velez.

Under these circumstances, the two immigration proceedings cannot be said to share an "identity of the cause of action," a required element of res judicata. *See Prochotsky*, 966 F.2d at 334. We have defined "identity of the cause of action" as "a core of operative facts which give rise to a remedy." *In re Matter of Energy Co-op., Inc.*, 814 F.2d at 1230. Although the immigration proceeding at issue here is based upon Mr. Alvear-Velez's 1993 conviction, the same conviction on which his 1994 deportation proceeding was based, the ground that the immigration authorities now invoke was unavailable to them in the first proceeding and therefore could not have been asserted. *See Ripplin Shoals Land Co., LLC v. U.S. Army Corps of Eng'rs*, 440 F.3d 1038, 1042 (8th Cir. 2006) ("[R]es judicata does not apply to claims that did not exist when the first suit was filed." (citing *Lundquist v. Rice Mem'l Hosp.*, 238 F.3d 975, 977 (8th Cir. 2001))); *see also Comm'r v. Sunnen*, 333 U.S. 591, 597-98 (1948) ("But where the second action between the same parties is upon a different cause or demand, the principle of res judicata is applied much more narrowly."). As we have noted, courts consistently have refused to apply res judicata to preclude a second suit that is based on a claim that could not have been asserted in the first suit. *See* cases cited *supra* note 4 and accompanying text.

Moreover, two circumstances require a less rigid application of res judicata in this case. The relevant change

in the law here is statutory in nature, as opposed to a change in case law, and that change is being applied in the administrative context. *See Fisher*, 864 F.2d at 439; 18 Moore, *supra*, ¶ 131.22[3] (acknowledging that a new statute may justify institution of a subsequent action); *see also Collins*, 468 F.3d at 229 n.3 ("[R]es judicata of administrative decisions is not encrusted with rigid finality that characterizes the precept in judicial proceedings."); *Int'l Harvester*, 628 F.2d at 986 ("This court does not adhere to a rigid view of the doctrine in the administrative context.").

Finally, we note that the application of res judicata under these circumstances would be inconsistent with IIRIRA's statutory scheme and therefore would frustrate Congress' policy decision that aliens convicted of sexual abuse of a minor merit removal regardless of when their convictions occurred. *See* 8 U.S.C. § 1101(a)(43). Several of our sister circuits have suggested a similar approach. In *Tran v. Gonzales*, the Sixth Circuit concluded that the immigration authorities could institute new removal proceedings based on "convictions that were previously the subject of closed deportation proceedings." 447 F.3d 937, 939 (6th Cir. 2006). Under IIRIRA's amended definition of aggravated felony, the alien became "subject to removal proceedings on an entirely different charge," and therefore it did not matter that the same conviction had been the subject of the previous deportation proceeding. *Id.* at 940; *see also Channer v. Dep't of Homeland Sec.*, 527 F.3d 275, 280 n.4 (2d Cir. 2008) ("It may be that when DHS attempts to remove aliens convicted of aggravated felonies—as opposed to aliens falling into some other category making them removable—the determina-

tion of whether res judicata applies changes, given Congress's clear and emphatic position with respect to such aliens.").

Similarly, in *Lopez-Bazante v. Gonzales*, 237 Fed. App'x 131, 134 (9th Cir. 2007) (unpublished),[5] the INS brought deportation proceedings against Lopez-Bazante, an individual who had been convicted of sexual abuse of a minor, alleging that he was deportable because he stood convicted of a crime of moral turpitude; the deportation proceedings were terminated, and the INS failed to appeal the IJ's decision. In 2002, after IIRIRA expanded the definition of aggravated felony to include sexual abuse of a minor, the INS again brought removal proceedings against Lopez-Bazante alleging that he had been convicted of an aggravated felony. He appealed the BIA's decision that res judicata was inapplicable, but the Ninth Circuit rejected that submission. The court explained that res judicata was inapplicable because

> the government could not have taken advantage of [IIRIRA's] expanded definition of aggravated felonies, which included sexual abuse of a minor, to deport Petitioner. The government's inaction in challenging the IJ's 1995 termination of deportation proceedings based on Petitioner's alleged crimes involving moral turpitude may have resulted in a final judgment with respect to the 1994 second degree rape and sodomy

---

[5] Ninth Cir. R. 36-3(b) ("Unpublished dispositions and orders of this Court issued on or after January 1, 2007 may be cited to the courts of this circuit in accordance with Fed. R. App. P. 32.1."). *Lopez-Bazante* was decided on April 20, 2007.

convictions as crimes involving moral turpitude. Under IIRIRA, however, the situation was altered where the expanded class of crimes that qualify as aggravated felonies swept Petitioner's 1994 convictions in the new grounds for removal. Therefore, the import of the 1994 convictions, as a factual basis for removability, can be relitigated.

*Id.* (internal quotation marks and citations omitted) (footnote omitted).

The First Circuit also has suggested a similar result under these circumstances. In *Dalombo Fontes v. Gonzales*, the BIA similarly refused to apply res judicata "because the statutory definition of aggravated felony extant at the time of Fontes's prior removal proceedings was different and far narrower." 498 F.3d 1, 2 (1st Cir. 2007). Although it concluded that it did not have jurisdiction to consider the res judicata argument, it nevertheless expressed agreement with the BIA's decision. The First Circuit explained:

We think that the BIA correctly refused to terminate Fontes's removal proceedings in light of the clear congressional intent that its broadened definition of aggravated felony be applied retroactively. The government still had to prove that Fontes's conviction met the new definition of aggravated felony. It was neither an error of law nor an abuse of discretion for the BIA, to whom some deference on interpretation of immigration statutes is owed, not to accept Fontes's claim that res judicata barred any further proceedings by the government.

*Id.*

Thus, we must conclude that res judicata does not bar the present removal effort by the DHS. We emphasize that our holding is limited to the peculiar circumstances before us—the res judicata effect of an administrative final judgment rendered prior to a congressional decision to expand the avenues of relief available and to make those additional avenues of relief retroactive.

**B.**

Mr. Alvear-Velez next contends that the immigration authorities violated IIRIRA's transitional rules by charging him as being removable based on the same criminal conviction for which he previously was found to be not deportable. Under IIRIRA § 309(c)(1), contends Mr. Alvear-Velez, an alien who was in exclusion or deportation proceedings as of IIRIRA's effective date was not subject to IIRIRA's amendments, and the proceedings were to be conducted without regard to those amendments. He notes that, at the time of IIRIRA's effective date, his deportation proceedings had been terminated for more than two years. According to Mr. Alvear-Velez, Congress' stated intention not to subject IIRIRA's amendments to individuals pending in deportation proceedings during the transitional phase must be read as a concomitant intention not to apply IIRIRA's amendments to individuals whose deportation proceedings already were final.

We cannot accept Mr. Alvear-Velez's contention. We begin by setting forth the IIRIRA provisions on which Mr. Alvear-Velez's argument relies:

(a) IN GENERAL.—Except as provided in this section and sections 303(b)(2), 306(c), 308(d)(2)(D), or 308(d)(5) of this division, this subtitle and the amendments made by this subtitle shall take effect on the first day of the first month beginning more than 180 days after the date of the enactment of this Act (in this title referred to as the "title III-A effective date").

(b) PROMULGATION OF REGULATIONS.—The Attorney General shall first promulgate regulations to carry out this subtitle by not later than 30 days before the title III-A effective date.

(c) TRANSITION FOR ALIENS IN PROCEEDINGS.—

(1) GENERAL RULE THAT NEW RULES DO NOT APPLY.—Subject to the succeeding provisions of this subsection, in the case of an alien who is in exclusion or deportation proceedings as of the title III-A effective date—

(A) the amendments made by this subtitle shall not apply, and

(B) the proceedings (including judicial review thereof) shall continue to be conducted without regard to such amendments.

IIRIRA §§ 309(a)-(c). As evident from the statutory language, the transitional rules on which Mr. Alvear-Velez relies, by their own terms, apply only to "the amendments made by this subtitle." *Id.* § 309(c)(1)(A); *see also id.* § 309(a). That subtitle is subtitle A, which revised the procedures for the removal of aliens. *See Tran*, 447 F.3d at 939 ("Title III-A of the IIRIRA streamlined the removal process for criminal aliens by mandating detention pending

removal proceedings, eliminating the principal forms of relief from deportation, eliminating direct judicial review, and mandating that the Attorney General shall remove aliens within 90 days.").

The amended and retroactive definition of aggravated felony, *see* IIRIRA §§ 321(a)-(b), by contrast, is set forth in subtitle B, entitled "Criminal Alien Provisions," and contains its own effective date, *see* IIRIRA § 321(c). Section 321(c) states: "The amendments made by this section shall apply to actions taken on or after the date of enactment of this Act [September 30, 1996], regardless of when the conviction occurred . . . ." *See also Tran*, 447 F.3d at 939. Accordingly, the transitional rules, by their own terms, apply only to the procedures for removing aliens, rather than to the substantive changes to the definition of aggravated felony. Consequently, the DHS did not violate IIRIRA's transitional rules when it commenced removal proceedings against Mr. Alvear-Velez based on his 1993 conviction.

There is no dispute in this case that the removal charges against Mr. Alvear-Velez constitute, under IIRIRA § 321(c), an "action taken" on or after the date of enactment of IIRIRA, September 30, 1996. These proceedings were instituted in 1999, and, therefore, the amended and retroactive definition of aggravated felony was applied properly to his 1993 Illinois conviction. *See, e.g.*, *Tran*, 447 F.3d at 939, 940-41.[6]

---

[6] As we noted earlier, Mr. Alvear-Velez makes two other arguments. Neither requires extended discussion. Mr. Alvear-

(continued...)

[6] (...continued)

Velez contends that the immigration authorities, rather than filing new removal proceedings in 1999, could have filed on or before September 30, 1996, a motion to reopen his original deportation proceedings, under 8 C.F.R. § 1003.23(b)(1). Because the immigration authorities did not do so, he submits, the new proceedings should have been terminated. Although Mr. Alvear-Velez is correct that this option was available to the immigration authorities, nothing in regulation section 1003.23(b)(1) suggests that this was the immigration authorities' only manner of proceeding. *Cf. Channer*, 527 F.3d at 281-82 & n.6 (rejecting a similar argument made under 8 C.F.R. § 1003.30 because the "regulation permits but does not affirmatively require DHS to supplement already existing charges").

Mr. Alvear-Velez's final contention is that the present removal proceedings violate his *substantive* due process rights under the Fifth Amendment. He contends that "[s]ubstantive due process offers protection against repeated litigation of the same issue by an administrative agency." Petitioner's Br. at 22.

Mr. Alvear-Velez has not presented a valid substantive due process challenge to the DHS' decision to institute removal proceedings based on the same criminal conviction for which he previously was found not to be deportable. In challenging the decision of the DHS to institute these proceedings, Mr. Alvear-Velez is challenging executive action. Therefore, to succeed in his substantive due process claim, he must show that the executive action is so egregious that it "shocks the conscience." *See County of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998) (explaining that "the substantive component of the Due Process Clause is violated by executive action only when it can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense." (internal quotation marks

(continued...)

## Conclusion

For the foregoing reasons, the petition for review is denied.

PETITION FOR REVIEW DENIED

---

[6] (...continued)
and citation omitted)). Here, the DHS merely instituted removal proceedings based on a change in law that Congress itself made retroactive. Far from being "egregious" or "conscience-shocking," the DHS' action here was consistent with both the language and intent of IIRIRA.

---